IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CARMIE DIAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| CROSSMARK, INC., | ) | |
| Serve: Registered Agent | ) | |
| Capitol Corporate Services, Inc. | ) | |
| 222 E. Dunklin, Suite 102 | ) | |
| Jefferson City, Missouri, 65101 | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Plaintiff Carmie Diaz ("Plaintiff" or "Carmie"), for her complaint against Defendant Crossmark, Inc. ("Defendant" or "Crossmark"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an individual residing in Missouri.

2. Defendant is a corporation organized and existing under the laws of the State of Delaware. It can be served through its registered agent, Capitol Corporate Services, Inc., 222 E. Dunklin, Suite 102, Jefferson City, Missouri, 65101.

3. The Court has jurisdiction over this action, which includes a claim arising under the Americans with Disabilities Act (42 U.S.C. §§ 12101, *et seq.*) (the "ADA"), pursuant to 28 U.S.C. § 1331.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) in that Crossmark does business in the State of Missouri and because the events or omissions giving rise to the subject matter of this action occurred in Missouri.

1

## FACTUAL BACKGROUND

5. Carmie began working as a brand ambassador for Crossmark at various Wal-Mart locations in Missouri from 2015 through August 26, 2017.

6. On August 26, 2017, Crossmark terminated Carmie's employment after Wal-Mart complained to Crossmark that she was not at her assigned workstation (*i.e.* a mobile cart from which Carmie promoted various food and non-food products that Crossmark was promoting for Wal-Mart) on various occasions, or alternatively, because Carmie was not uniformed correctly.

7. As Crossmark was aware while Carmie worked for them, Carmie suffered from and suffers from post-traumatic stress disorder ("PTSD").

8. During her time as an employee of Crossmark, Carmie's PTSD would manifest in panic attacks.

9. One of the things that would cause a panic attack to be brought on was overheating while at work.

10. Accordingly, Carmie asked Crossmark to provide her with a reasonable accommodation for her disability.

11. Such an accommodation could have included a different uniform that Crossmark permitted Carmie to wear while promoting the various food and non-food products that she promoted on Crossmark's behalf.

12. For reasons unknown to Carmie, Crossmark refused to permit her to wear short-sleeved shirts or otherwise adjust her uniform (*i.e.* which at all times, apparently, was supposed to include gloves and a hat) in some way that would not cause her to overheat.

13. Additionally, Crossmark refused to adjust Carmie's work assignments in a way that would have permitted her to promote non-food products so that she would not have to wear the uniform that Crossmark required its employees handling food products to wear.

14. Rather, the accommodation that Crossmark offered to Carmie was for her to periodically go to a meat cooler in the various Wal-Mart locations to cool herself down if she felt like was overheating.

15. Faced with no choice but to accept the accommodation offered by Crossmark in this regard, Carmie began to make periodic trips to the meat cooler in the Wal-Mart locations that she was working in to cool herself down.

16. While she made these trips to the meat cooler, of course, she was away from her assigned workstation.

17. She believed that making the trips was something that would not cause her to get into trouble with either Crossmark or Wal-Mart.

18. However, she came to find out that Crossmark and Wal-Mart did not approve of her trips to the meat cooler, since the trips meant that the workstation that she had been stationed to was unmanned for the period of time that she was going to the meat cooler.

19. On some days, then, to avoid getting into trouble with Crossmark or Wal-Mart, Carmie would wear a short-sleeved shirt, and/or she would periodically remove her hat and gloves to cool down as a way to avoid overheating and a panic attack.

20. Crossmark placed Carmie in a remarkably precarious position; Carmie could: (a) utilize the purported "reasonable accommodation" offered by Crossmark (of cooling herself in the meat cooler) and getting into trouble for being away from her workstation; (b) wear short-sleeves and remove her hat to avoid overheating and risk getting into trouble for not complying with

Crossmark's uniform requirements; or (c) wear the uniform that Crossmark insisted on, overheat at work, and potentially trigger a panic attack.

21. Ultimately, on August 26, 2017, Crossmark terminated Carmie's employment because she was not at her workstation and/or because she was not properly uniformed at all times.

22. Carmie is unaware of any other reasons for her termination, and she has no reason to believe that her performance was not perfectly adequate.

23. On or about November 8, 2017, Carmie filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant discriminated against her on the basis of her disability.

24. On or about November 14, 2019, Carmie received a Notice of Right to Sue from the EEOC.

## **COUNT I – FAILURE TO ACCOMMODATE (ADA)**

25. Plaintiff incorporates the allegations set forth above in paragraphs 1 through 24 as if fully set forth herein.

26. Plaintiff is a qualified individual with a disability under the ADA in that she met the legitimate skill, experience, education, and other requirements of her position with Crossmark and could perform the essential functions of that position with or without a reasonable accommodation.

27. Crossmark is a covered employer under the ADA.

28. Plaintiff requested that Defendant reasonably accommodate her disability by either permitting her to wear a different uniform to work and/or by permitting her to promote non-food products that did not require her to wear the uniform that Crossmark insisted on its employees wearing.

4

29. Defendant did not accommodate Plaintiff's request and instead required Plaintiff to "cool" herself in the meat coolers at the various Wal-Mart locations that Plaintiff worked at.

30. Defendant's "accommodation" of Plaintiff was not a reasonable accommodation under the ADA, and therefore, Defendant failed to reasonably accommodate Plaintiff's disability in violation of the ADA.

31. Defendant's conduct in this regard caused Plaintiff damages in the form of lost wages, lost benefits, humiliation, and emotional distress.

32. Additionally, Defendant's conduct in this regard was wanton and willful and warrants an award of punitive damages.

WHEREFORE, Plaintiff Carmie Diaz respectfully requests that the Court enter judgment in her favor and against Defendant Crossmark, Inc. for damages in excess of $75,000, including damages for lost wages, front pay, lost benefits, emotional distress, interest, liquidated damages, attorneys' fees, expenses, equitable relief, punitive damages, and any other damages authorized by 42 U.S.C. § 12101; and such additional relief as is just and proper.

### COUNT II – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY/RETALIATION IN CONNECTION WITH PLAINTIFF'S ASSERTION OF RIGHTS UNDER THE ADA

33. Plaintiff incorporates the allegations set forth above in paragraphs 1 through 32 as if fully set forth herein.

34. Plaintiff is a qualified individual with a disability under the ADA in that she met the legitimate skill, experience, education, and other requirements of her position with Crossmark and could perform the essential functions of that position with or without a reasonable accommodation.

35. Crossmark is a covered employer under the ADA.

36. Insofar as Defendant accommodated Plaintiff's disability by instructing her to cool herself in the meat cooler at the various Wal-Mart locations that Plaintiff worked at, Defendant then retaliated against Plaintiff by terminating her for utilizing the "accommodation" that it had offered her as a reasonable accommodation for her disability.

37. Defendant's retaliation and discharge of Carmie's employment violates both the ADA and public policy (as embodied in the ADA).

38. Defendant's conduct in this regard caused Plaintiff damages in the form of lost wages, lost benefits, humiliation, and emotional distress.

WHEREFORE, Plaintiff Carmie Diaz respectfully requests that the Court enter judgment in her favor and against Defendant Crossmark, Inc. for damages in excess of $75,000, including damages for lost wages, front pay, lost benefits, emotional distress, interest, liquidated damages, attorneys' fees, expenses, equitable relief, punitive damages, and any other damages authorized by 42 U.S.C. § 12101; and such additional relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for the foregoing causes of action.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests the trial be held in Kansas City, Missouri.

## CIVIL COVER SHEET

Attached as **Exhibit A** is a copy of the Civil Cover Sheet.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ Brad K. Thoenen*
Brad K. Thoenen, KS 24479
bthoenen@hkm.com
John J. Ziegelmeyer III, KS 23003
jziegelmeyer@hkm.com
1501 Westport Road
Kansas City, Missouri 64111
816.875.9339

ATTORNEYS FOR PLAINTIFF